**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ALLEN FITZGERALD CALTON,** | ) | |
| **#1123880,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **3:05-CV-2022-N** |
| | ) | **ECF** |
| **DALLAS COUNTY, et al.,** | ) | |
| Defendants. | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the District Court referring all pre-trial motions filed on November 7, 2006, this case has been referred to the United States Magistrate Judge for pre-trial management. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a *pro se* civil rights complaint brought by a state inmate pursuant to 42 U.S.C. § 1983.

Parties: Plaintiff is currently confined at the Clements Unit of the Texas Department Criminal Justice – Correctional Institutions Division (TDCJ-CID) in Amarillo, Texas. At the time of the events in question, he was incarcerated at the Dallas County Jail.

Defendants are Dallas County Sheriff's Department Officers Diverous Johnson, Van Williams, James Terry, Darrell Walls, and William Mitchell. The Court previously dismissed part of the complaint, and issued process on the remaining claims. *See* Order filed June 8, 2006, accepting Findings, Conclusions and Recommendation of the Magistrate Judge filed May 11, 2006, dismissing in part and issuing process in part.

Statement of Case: The second amended complaint, filed on December 1, 2006, alleges that Officers Johnson, Williams, Terry, Walls and Mitchell, were deliberately indifferent to Plaintiff's suicidal thoughts and severe depression, for which he was taking three medications, when they gave him a razor without visual monitoring and supervision on April 23 and July 9, 2005, while he was housed on the psychiatric floor of the Dallas County Jail. On both occasions Plaintiff sliced his wrists with a shaving razor. He seeks compensatory and punitive damages.

Plaintiff's claims are presently at issue on the parties' cross motions for summary judgment. *See* Defendants Johnson and Williams' motion for summary judgment filed on December 4, 2006; Defendants Terry, Walls and Mitchell's motion for summary judgment filed on March 30, 2007; Plaintiff's motion for summary judgment filed March 21, 2007. Defendants contend that Plaintiff failed to state an actionable claim against them, that they are entitled to qualified immunity, and that Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies. Defendants Terry, Walls and Mitchell also contend that Plaintiff's claims should be dismissed for insufficiency of service of process.[1]

Undisputed Facts:

1.  On February 18, 2005, Plaintiff was transferred from the Texas Department Criminal Justice to the Dallas County Jail on the basis of a writ of habeas corpus ad testificandum issued by this Court to attend the trial in *Calton v. Clark, et al.*, 3:02cv2215-N (N.D. Tex., Dallas Div.).

2.  At the time Calton was booked in the Dallas County Jail, he was taking three

---

[1] Defendants submitted two appendices, one in support of each of their two motions for summary judgment. (*See* Defs.' Appx. filed on Dec. 4, 2006, and Defs.' Appx. filed on Apr. 2, 2007).

medications for depression, and was thereafter assigned to an open behavioral observation tank on the fourth floor of the Dallas County Jail. (Mental Health Screening and Treatment Plan attached to Plaintiff's Response to Suppl. Questionnaire; also part of Defs' Appx at 35-36).

3. A Suicide Risk Assessment, completed on February 20, 2005, reflected that, while Plaintiff "ha[d] experienced suicidal ideation in the past," he had no current suicidal or homicidal ideation, no past suicide attempts, no family history of suicide, and no recent trauma or loss. (Defs' Appx. at 37).

4. The behavioral observation tanks at the Dallas County Jail consist of two types: (1) open behavioral observation tanks, and (2) closed behavioral observation tanks. (*Id.* at 48). The latter are further subdivided and contain two classes of inmates: (1) inmates on 23-hour lockdown (non-suicide), and (2) inmates on suicide watch. (*Id.*). The open behavioral observation tanks and the closed, non-suicide behavioral tanks are both located on the fourth floor of the Dallas County Jail. The closed suicide-watch behavioral observation tanks are located on the third floor. (*Id.*).

5. Inmates in open behavior observation tanks are not on lock down. (*Id.* at 48). They are permitted to come and go from their cell into the dayroom, where they can interact with other inmates, watch television or use the telephone. (*Id.*). Moreover, they are permitted to have a thin, disposable shaving razor upon request for the purpose of shaving for one hour on Saturdays, while officers "make rounds . . . generally observing inmates." (*Id.*).

6. Inmates in closed behavioral observation tanks (non-suicide) are permitted to have a razor "if it is determined that the inmate is not aggravated or aggressive or exhibiting other behaviors, including suicidal behavior," and the officer "remains at the cell to observe an

3

inmates' use of the razors." (*Id.* at 48-49).

7. Inmates in closed behavioral observation tanks (suicide watch) are not permitted to have a shaving razor. (*Id.* at 49).

8. On April 23, 2005, Plaintiff was assigned to an open behavioral observation tank on the fourth floor of the Dallas County Jail. (Defs' Appx. at 47). Pursuant to normal procedures, he was provided with a razor for the purpose of shaving. (*Id.* at 49).

9. At approximately 9:00 a.m., while Defendant Johnson was picking up the razors, he was notified by other inmates that Plaintiff had cut his wrists. (*Id.*). Following treatment at the nurses' station, Calton was placed in a suicide watch tank (closed observation tank) on the third floor and a suicide log was started. (*Id.* at 45 and 49). Plaintiff remained on suicide watch until April 25, 2005, when he was transferred back to an open observation tank on the fourth floor. (*Id.* at 46).

10. A medical evaluation by the psychiatric staff conducted on July 6, 2005, while Plaintiff was still housed on a fourth floor open observation tank, reflected that he was taking his psychotropic medications, and that he did not have thoughts or plans of harming himself or others. (Defs.' Suppl. Appx. at 68).

11. During normal procedures on July 9, 2005, while Plaintiff was housed in an open behavioral observation tank on the fourth floor, he was given a shaving razor. (*Id.* at 78) Within ten or fifteen minutes after the razors were distributed, Defendants Terry, Walls and Mitchell were notified by other inmates that Plaintiff had cut his wrists. (*Id.* at 78, 82 and 86).

12. Following treatment at the nurses' station, Plaintiff was placed in a suicide watch tank (closed observation tank) on the third floor and a suicide log was started. (*Id.* at 71, 78, 82

4

and 86). Plaintiff remained on suicide watch until July 11, 2005, when he was transferred back to an open behavioral observation tank on the fourth floor. (*Id.* at 72-73).

Findings and Conclusions: To prevail on a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986). The materiality of facts is determined by substantive law. *Anderson,* 477 U.S. at 248, 106 S. Ct. at 2510. An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *Burgos v. Southwestern Bell Telephone Co.,* 20 F.3d 633, 635 (5th Cir.1994). Once the moving party has made an initial showing, the party opposing the motion for summary judgment may not merely rely on his pleadings, but must come forward with competent evidentiary materials that establish a genuine fact issue. *Anderson,* 477 U.S. at 256-257, 106 S. Ct. at 2514; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986). The court must resolve any factual controversies in favor of the non-moving party. *Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 98 (5th Cir.1996).

1. Exhaustion of Administrative Remedies

Exhaustion of administrative remedies under 42 U.S.C. § 1997e(a), is mandatory before the filing of any suit challenging prison conditions. *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2382-83 (2006) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001)); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

Fifth Circuit case law recognizes that exhaustion of administrative remedies "may be

5

subject to certain defenses such as waiver, estoppel, or equitable tolling," *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (citing *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998)). Moreover, the misconduct of prison officials in connection with an inmate's attempt to exhaust may render administrative remedies unavailable and, thus, preclude a defendant from raising failure to exhaust as an affirmative defense. *See Aceves v. Swanson,* 75 Fed. Appx. 295, 296 (5th Cir. 2003) (per curiam) (administrative remedies were unavailable because prison authorities repeatedly refused or failed to give an inmate the appropriate grievance forms despite his requests); *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003) (same); *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir. 2004) (affirmative defense of exhaustion is subject to estoppel if prison officials preclude the inmate from exhausting administrative remedies); *Boyd v. Corrections Corp. of America,* 380 F.3d 989, 996-97 (6th Cir. 2004) (prison officials' failure to respond to prison grievances rendered administrative remedies unavailable).

Plaintiff contends that his efforts to exhaust administrative remedies were thwarted by jail personnel. (*See* Plaintiff's Declaration in Support of his Attempt to Exhaust the Grievance Procedure filed March 9, 2007). He denies ever being provided an opportunity to appeal following the denial of the grievance stemming from the first attempted suicide, and denies ever receiving a response to the grievance stemming from the second attempted suicide. (*Id.* at 1 and 3-4).

For the reasons stated hereafter, finding no genuine issues of fact with respect to whether Defendants were deliberately indifferent, and given the additional time and effect which would be required to determine whether Plaintiff failed to exhaust administrative remedies or whether the exhaustion requirement should be waived, the Court assumes for purposes of this

6

recommendation that the exhaustion requirement should be deemed to have been waived.

    2.    <u>Insufficiency of Service of Process</u>

In their motion for summary judgment, Defendants Terry, Walls and Mitchell assert that Plaintiff's claims should be dismissed for insufficiency of service of process pursuant to Fed. R. Civ. P. 12(b)(5). They rely on Fed. R. Civ. P. 4(m), which requires that service of process be accomplished within 120 days of the filing of the complaint. (Defs. Terry, Walls, and Mitchell's Memorandum in Support at 20).

Plaintiff contends that Defendants waived their insufficiency of service of process defense because their initial answer to the complaint did not raise the defense. (Plaintiff's Response filed April 16, 2007, at 1-3). A party waives a defense based upon insufficiency of service of process if the defense "is neither made by motion under [Fed.R.Civ.P. 12] nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." Fed.R.Civ.P. 12(h)(1). Terry, Walls, and Mitchell's initial answer, filed on December 22, 2006 (*see* Docket #70), did not raise the defense of insufficiency of service of process, and they did not raise the defense in a pre-answer motion. Thus, they waived the defense of insufficiency of service of process. *See* Fed.R.Civ.P. 12(h)(1); *Kersh v. Derozier,* 851 F.2d 1509, 1511-12 (5th Cir. 1988). Therefore, the District Court should deny their motion to dismiss filed pursuant to Rule 12(b)(5).

    3.    <u>Official Capacity Claims</u>

Defendants seek summary judgment on Plaintiff's claims against Defendants Johnson, Williams, Terry, Walls and Mitchell for monetary damages in their official capacity. Plaintiff has not objected.

Official-capacity claims are merely another way of pleading an action against the entity of which the individual defendants are agents. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S. Ct. 3099 (1985). "As long as the ... entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *See id.* at 166. This Court considered in detail Plaintiff's allegations against Dallas County, Defendants' employer, and found that he failed to allege sufficient facts to suggest actual or constructive knowledge of a custom or policy attributable to Dallas County. (*See* Order filed June 8, 2006, adopting Findings, Conclusions and Recommendation of the Magistrate Judge filed May 11, 2006, dismissing Plaintiff's claims against Dallas County and Sheriff Valdez). Therefore, the District Court should grant summary judgment in favor of Defendants on Plaintiff's official-capacity claims because they are duplicative of the claims against Dallas County. *See Castro Romero v. Becken,* 256 F.3d 349, 355 (5th Cir. 2001).

  4. <u>Individual Capacity Claims</u>

The Eighth Amendment applies to Plaintiff's attempted suicide claims because he was a convicted prisoner at the time of his transfer from TDCJ to the Dallas County Jail on a writ of habeas corpus ad testificandum. "[T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one...." *Whitley v. Albers,* 475 U.S. 312, 327, 106 S. Ct. 1078 (1986). A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the prisoner's health

8

and safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).[2]

Defendants do not dispute that Plaintiff has met the objective element by virtue of the conceded fact that Calton slashed his wrists with a razor. The Court, thus, turns to the subjective element – i.e., the deliberate indifference element.

"Deliberate indifference," as it is used in the Eighth Amendment context, comprehends more than mere negligence but less than the purposeful or knowing infliction of harm. *See Farmer,* 511 U.S. at 836, 114 S. Ct. 1970; *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285 (1976). Deliberate indifference requires that a prison official know of and disregard a substantial risk of serious harm to inmate health or safety. *See Farmer,* 511 U.S. at 837, 114 S. Ct. 1970. It is not enough that there was a danger of which a prison official objectively should have been aware. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "In other words, the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006); *Thompson*, 245 F.3d at 459. *Sanville v. McCaughtry,* 266 F.3d 724, 737 (7th Cir. 2001) (issue is whether the defendant was subjectively "aware of the substantial risk that [the deceased prisoner] might take his own life"). Liability cannot attach where "the defendants simply were not alerted to the likelihood that [the prisoner] was a genuine suicide risk." *Boncher ex rel.*

---

[2] Defendants rely on cases applying the deliberate indifference standard in the context of a suicide or an attempted suicide by pre-trial detainees. *See Thompson v. Upshur County, Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001); *Hare v. City of Corinth, Miss*, 74 F.3d 633, 643, 649-50 (5th Cir. 1996) (en banc). The deliberate indifference standard, generally applicable only to convicted inmates, also applies to pretrial detainees who complain of an episodic act or omission with respect to medical care and protection from harm.

*Boncher v. Brown County,* 272 F.3d 484, 488 (7th Cir. 2001).

      a.      <u>First Attempted Suicide</u>

The requirement of subjective awareness of a suicide risk is dispositive of Plaintiff's first suicide attempt. The record is devoid of any evidence from which it could be inferred that Defendants Johnson and Williams were aware that Plaintiff was at substantial risk for attempting to commit suicide.

The undisputed summary judgment evidence establishes that on April 23, 2005, Plaintiff was housed in an open behavioral observation tank, as opposed to a closed behavioral observation tank. He was allowed to come and go from his cell into the dayroom where he could interact with other inmates, watch television or use the telephone. (Defs' Appx. at 48). He was also allowed to have a thin, disposable shaving razor upon request for the purpose of shaving on Saturdays, while officers "ma[d]e rounds . . . generally observing inmates." (*Id.* 48-49).

Plaintiff argues that Johnson and Williams "knew that [he] had been previously diagnosed in the Dallas County Jail by medical personnel for severe depression and paranoid schizophrenia in the summer of 2004." (Second Amended Complaint filed on Dec. 1, 2006, at 9, also attached to Defs.' Appx. at 1-24). He asserts that "Patricia Goodwin the Mental Health Liason Personnel who interviewed me on 2-20-05 can confirm my *past* suicidal thoughts as noted by her and that the said Mental Health Screening Form would become a part of my inmate file and floor buffcard while incarcerated in the Dallas County Jail." (*See* Plaintiff's Response to Magistrate Judge's Questionnaire filed on April 20, 2006, at 3).

Plaintiff relies on three exhibits: (1) A Mental Health Screening Form, reflecting that he was then being treated for depression, was taking three psychotropic medications, and wanted

10

them continued; (2) A Treatment Plan, noting that he was already in Behavior Observation and that he would be referred to a psychiatrist on February 25, 2005, and (3) A Suicide Risk Assessment, showing that he had no current suicidal or homicidal ideation, that he had no past suicide attempts, family history of suicide or recent trauma or loss, although he "ha[d] experienced suicidal ideation in past." (*Id.* at Exh. A).

Plaintiff's reliance on his treatment plan, as evidence that Defendants were on notice that he posed a substantial suicide risk, is insufficient to establish deliberate indifference. Plaintiff must come forward with evidence that Johnson and Williams had actual knowledge he was a suicide risk -- namely that they were aware of the information contained in his medical record about his severe depression and current treatment regimen, and that they drew an inference that Plaintiff posed a substantial risk of harm. *See Thompson v. Upshur County, Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001); *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003).

Assuming *arguendo* that the mental health screening form was actually attached to the "floor buffcard," and that Defendants knew about it, the document is insufficient to create a genuine issue of fact that either could have drawn an inference of a substantial risk that Calton would attempt to commit suicide. While Plaintiff suffered from depression and had experienced suicidal ideation in the past, at the time of his booking in the Dallas County Jail, he had no current suicidal ideation. (*see* Exh. A to Response to Suppl. Qst. at Mental Health Screening, Treatment Plan, and Suicide Risk Assessment). He also had no past suicidal attempts, no family history of suicide, and no recent trauma or loss. (*Id.*). Moreover, the fact that Plaintiff had been assigned to an open behavior observation tank after being seen by health care professionals in February 2005 further erodes any possibility that either Johnson or Williams could have drawn

11

an inference of substantial risk of self-inflicted harm in light of the facts known to them on April 23, 2005.

The Court further notes that the record is devoid of any evidence indicating that Plaintiff was exhibiting strange or unusual behavior before April 23, 2005, and that either Johnson or Williams knew of any change in his behavior, thus, placing them on notice that his depression was no longer under control.

Under these circumstances, the Court must conclude that neither Plaintiff's depression nor his treatment regime, standing alone, was sufficient to put Defendants Johnson and Williams on notice that he posed a substantial and imminent risk of suicide on April 23, 2007, when he was provided a shaving razor. *See Whitt v. Stephens County*, 2007 WL 1577930, *2 (5th Cir. May 30, 2007) (unpublished) ("single affirmative answer on an intake screening exam, indicating that pre-trial detainee had either recently lost a family member or friend or was worried about major problems other than his arrest" was insufficient to establish the individual officers had actual knowledge that the decedent was a suicide risk. Plaintiff had made no showing that all officers would interpret the affirmative answer on the screening exam as evidence that he was a suicide risk, and none of the officers had reported observing any troubling behavior from the decedent).

Accordingly, Defendants Johnson and Williams were not deliberately indifferent and their motion for summary judgment should be granted.

      b.    <u>Second Attempted Suicide</u>

The requirement of subjective awareness of a suicide risk is dispositive of Plaintiff's second suicide attempt as well. The record is devoid of any evidence from which it could be

inferred that Defendants Terry, Walls and Mitchell were aware that Plaintiff was at substantial risk for attempting to commit suicide on July 9, 2005, when he was given a shaving razor.

In support of his claim, Plaintiff relies on the incident report prepared and the suicide precautions taken following his first suicide attempt on April 23, 2005. He argues that, since the incident report was attached to his floor "buffcard," Defendants Terry, Walls, and Mitchell knew or should have known of his prior suicide attempt, and the likelihood that he would attempt suicide again on July 9, 2005. (Plaintiff's cross motion for summary judgment at 10; and Plaintiff's Response to Defendants' motion for summary judgment filed May 8, 2007). He, thus, argues that "Defendants had a duty to review the floor buffcard for previous suicide attempts," before handing him a razor without supervision. (Plaintiff's response to Defendants' motion for summary judgment at 3).[3]

It is undisputed that on July 9, 2005, Plaintiff was housed in the open behavioral observation tank on the fourth floor of the Dallas County Jail. While he had previously been placed on suicide watch for three days following the first suicide attempt, that precaution was discontinued on April 25, 2005, over two months earlier, and he was returned to an open behavioral observation tank, where he remained until the second suicide attempt. (*See* Defendants' Appx. at 46). As a result of being re-assigned to an open behavioral observation tank, Plaintiff was again allowed to come and go from his cell into the dayroom. (*See* Defs.' Suppl. Appx. at 81-82). Likewise he was again allowed to have a thin, disposable shaving razor,

---

[3] As with the case of Defendants Johnson and Williams, no competent evidence has been presented to show that either Terry, Wells or Mitchell had reviewed or had knowledge of the first attempted suicide incident. Moreover, as each related in his affidavit (Defendants' Appendix at 76-87), Plaintiff's assignment to an open behavioral observation tank on July 9, 2005, had been made by the psychiatric physician.

13

while officers "ma[d]e rounds . . . generally observing inmates." (*Id.* 81-82).

Plaintiff fails to point to any evidence to establish that his condition changed following his return to an open behavioral observation tank on April 25, 2007, and his July 9, 2005 attempted suicide, and that either Terry, Walls, or Mitchell knew about this change, thus, placing them on notice that his depression was no longer under control.  Moreover, a medical evaluation conducted by the psychiatric staff on July 6, 2005, only three days before the second attempted suicide, indicated that Plaintiff was taking his psychotropic medications, and that he did not have thoughts or plans of harming himself or others.  (*Id.* at 68).

Under these circumstances, the April 23, 2005 incident report, without more, was insufficient to place Defendants on notice that Plaintiff posed a substantial and imminent risk of suicide if handed a razor without supervision.

Plaintiff relies on *Guglielmoni v. Alexander*, 583 F.Supp. 821 (D. Conn. 1984), to argue that Defendants had sufficient notice of the risk in providing him a razor without supervision. (Plaintiff's Response at 5).  In *Guglielmoni*, an inmate twice attempted suicide by hanging himself -- first with a shoelace and then with a torn bed-sheet -- before he actually succeeded in hanging himself with shoelaces. *Id.* at 825.  Following the second suicide attempt, the inmate remained confined in isolation or segregation, which created an additional obligation to scrutinize him periodically.  *Id.*  In denying summary judgment, the court concluded that the attempted suicides "create[d] a notice that perhaps decedent should not have had access to shoelaces," and that genuine issues of fact remained as to whether defendants had fulfilled their duty of scrutinizing the decedent periodically.  *Id.* at 828.

*Guglielmoni* is clearly distinguishable from this case because the inmate was confined in

14

isolation at the time of his third and fatal suicide attempt, which created additional obligations on the part of his custodian.  The Plaintiff Calton, on the other hand, had been returned to an open behavioral observation tank more than two months before his second attempted suicide and he has presented no evidence showing that his condition may have changed in the interim.[4]

Alternatively, Plaintiff argues that Terry, Walls and Mitchell knew of his risk for suicide because of the February 20, 2005 mental health screening form.  (Second Amended Complaint at 14).  As noted above, with respect to the first suicide attempt, Plaintiff's reliance on his depression and treatment regime, standing alone, was insufficient to put Defendants on notice that he posed a substantial and imminent risk of suicide.  The same applies to the second suicide attempt.

In light of the undisputed summary judgment evidence, the Court concludes that Defendants Terry, Walls and Mitchell were not deliberately indifferent to Plaintiff's serious depression and suicidal tendencies.  Accordingly, their motion for summary judgment should be granted.

---

[4] Plaintiff also relies on *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182 (5th Cir. 1986), for the proposition that officials knew that the inmate had attempted suicide in previous confinement. (Resp. at 5).  *Partridge* is inapposite.  The Fifth Circuit reversed in part and remanded, concluding that Plaintiff had stated a claim upon which relief can be granted against the detention center and the City of Houston.  To the extent the district court treated the motion to dismiss as a motion for summary judgment, the Fifth Court found the record inadequate to resolve the issues.

RECOMMENDATION:

For the foregoing reasons, it is recommended that Defendants' motions for summary judgment (Docket # 56 and #100) be GRANTED, that Defendants Terry, Walls and Mitchell's motion to dismiss filed pursuant to Rule 12(b)(5), incorporated within their motion for summary judgment (Docket #100) be DENIED, and that Plaintiff's motion for summary judgment (Docket #97) be DENIED.

It is further recommended that Plaintiff's motion to enlarge time to disclose experts (#115) be DENIED as moot.

The pre-trial management referral should be TERMINATED.

A copy of this recommendation will be mailed to Plaintiff and counsel for Defendants.

Signed this 25th day of June, 2007.

*Wm. F. Sanderson, Jr.*
_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.